UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

ROSEMARIE GAGAIN,

               Plaintiff,

   v.

PAUL A. SCIRPO, JR.,

               Defendant.

3:09-cv-00571 (CSH)

**RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**HAIGHT, Senior District Judge:**

**I.     Introduction and Summary of Facts**

Plaintiff Rosemarie Gagain (hereinafter "Plaintiff"), a resident of Wolcott, Connecticut, brings this action against Defendant Paul A. Scirpo, Jr. (hereinafter "Defendant"), who was at all times relevant to this lawsuit Chief of Police of the Wolcott Police Department, over incidents stemming from Plaintiff's arrest on criminal charges by the Wolcott Police Department. Plaintiff states that "[i]n the year 2007, officers of the Wolcott Police Department arrested [her] on criminal charges of which she was innocent," and on March 14, 2008 such "criminal charges were dismissed by a Judge of the Superior Court." [Doc. 1] at 2.

Exactly a month after that date, i.e., on April 14, 2008, Plaintiff avers that she requested through counsel "copies of all records concerning her aforesaid false arrest so she could identify the person or persons who violated her rights under the Fourth Amendment to the United States Constitution and seek redress for such violation in court." *Id.* She claims that "[t]hereafter [Defendant] ... wrongfully and tortiously concealed and/or destroyed the said evidence for the

purpose of depriving [Plaintiff] of her right of access to the courts of the United States to obtain redress of her grievances," and, as a result, she "has been deprived of her right to seek redress for constitutional violations in this [C]ourt, which right is secured to her by the First Amendment to the United States Constitution as enforced through Sections 1983 and 1988 of Title 42 of the United States Code." *Id.* Accordingly, Plaintiff "claims judgment against ... [D]efendant for compensatory damages, punitive damages, attorney fees, costs and such equitable relief ... as this [C]ourt shall deem fair and appropriate." *Id.* at 2-3.[1]

Defendant has moved for Summary Judgment in this action. *See* [Doc. 22]. In support of this Motion, Defendant contends that Plaintiff's First Amendment Claim fails as a matter of law as: (1) Plaintiff's claim was not frustrated or impeded due to Defendant's actions; (2) Defendant did not act deliberately or maliciously; and (3) Plaintiff's legal claim was not actually frustrated or impeded. [Doc. 24] at 2-8. Defendant also contends that he is entitled to qualified immunity from Plaintiff's claims, as his actions did not violate clearly established law and, moreover, it was objectively reasonable for him to have believed that his actions did not violate any such state law. *Id.* at 8-10. Plaintiff filed a brief in opposition; Defendant filed a reply to Plaintiff's opposition brief; and Plaintiff filed a Sur-Reply brief in response to Defendant's reply. *See* [Doc. 27], [Doc. 31], and [Doc. 32]. Defendant's Motion for Summary Judgment is now ripe for adjudication.

## II.    Standard of Review

The standards for summary judgment are familiar. Summary judgment is appropriate when

---

[1]   Plaintiff also claims that "[p]rior to the dismissal" of the aforementioned criminal charges by a Superior Court Judge in March of 2008, "on numerous occasions and with the assistance of her husband [she] attempted to obtain a copy of the police record for the incident in question." [Doc. 27] at 2.

"there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." F. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986). The role of a district court in considering a motion for summary judgment is therefore "not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *In re Dana Corp.*, 574 F.3d 129, 151 (2d Cir. 2009). The moving party, in this case the Defendant, bears the burden of showing that he is entitled to summary judgment. Once he has satisfied this burden, in order to defeat the motion the party opposing summary judgment, in this case the Plaintiff, "must set forth specific facts demonstrating that there is a genuine issue for trial." *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir 2009) (internal quotation marks omitted). A dispute about a genuine issue of fact exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In making its determination on a summary judgment motion, a trial court will resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought – here, Plaintiff. Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 274 (2d Cir. 2009). It is "[o]nly when reasonable minds could not differ as to the import of the evidence" that summary judgment is proper. *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991). When "a motion for summary judgment is properly supported by documentary and testimonial evidence ... the nonmoving party may not rest upon the mere allegations or denials of his pleadings, but rather must present significant probative evidence to establish a genuine issue of fact." *Marczeski v. Gavitt*, 354 F.Supp. 2d 190, 193 (D. Conn. 2005) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986)).

3

In order to present a "genuine issue of material fact" the nonmoving party – i.e., Plaintiff – must therefore present contradictory evidence "such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248.  Consequently the nonmoving party must present affirmative evidence in order to defeat a properly supported summary judgment motion.  As the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," if the nonmoving party submits evidence that is "merely colorable," summary judgment may be granted.  *Id.* at 247-50.  In sum, a "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v.  Catrett,* 477 U.S. at 322.

### III.    Legal Discussion

Defendant has moved for Summary Judgment in this action, averring that Plaintiff's First Amendment Claim fails as a matter of law as: (1) Plaintiff's claim was not frustrated or impeded due to Defendant's actions; (2) Defendant did not act deliberately or maliciously; and (3) Plaintiff's legal claim was not actually frustrated or impeded. [Doc. 24] at 2-8.  Defendant also contends that he is entitled to qualified immunity from Plaintiff's claims, as his actions did not violate clearly established law and, moreover, it was objectively reasonable for him to have believed that his actions did not violate any such state law.  *Id.* at 8-10.

### A.    Section 54-142a and the Erasure of Records

A key aspect of this case involves Defendant's actions within the context of C.G.S.A. § 54-142a, which provides that "[w]henever in any criminal case ... the accused, by a final judgment, is found not guilty of the charge or the charge is dismissed, all police and court records and records of any state's attorney pertaining to such charge shall be erased upon the expiration of the time to file

a writ of error or take an appeal," should "an appeal ... not [be] taken, or upon final determination of the appeal sustaining a finding of not guilty or a dismissal, if [such] an appeal is [indeed] taken." C.G.S.A. § 54-142a(a).  Section 63-1 of the Connecticut Practice Book provides that "[u]nless a different time period is provided by statute, an appeal must be filed within twenty days of the date notice of the judgment or recision is given."  Connecticut Practice Book § 63-1(a).  While such an appeal period "may be extended" under certain circumstances pursuant to Section 66-1 of the Connecticut Practice Book, no party claims that such circumstances were here present.  *See id.*; *see also* Connecticut Practice Book § 66-1.

Defendant thus contends that, as Plaintiff's "charges were dismissed on March 14, 2008, and the appeal period expired on April 3, 2008[,] the records were erased on April 3, 2008," and, accordingly, Defendant was "forbid[den] ... from disclosing the records" – and, as such, cannot be held "responsible for actions that hindered [Plaintiff's] efforts to pursue her claim, ... since at the time she requested the records from him (April 14, 2008), they were erased and pursuant to State Statute, could not be disclosed."  [Doc. 24] at 6.[2]

However, it is unclear from the record whether Defendant actually had physical possession of such records at the time of Plaintiff's April 14, 2008 request for them through her attorney.  While the above-quoted section of Defendant's Memorandum of Law in Support of his Motion for Summary Judgment – which discusses whether Defendant could *disclose* such records – appears to

---

[2]   Assuming that notice of judgment or decision was issued on the same day on which the final decision was rendered – i.e., March 14, 2008 – the Court notes that April 3, 2008 would have been the *last day* of the twenty-day appeal period which began on March 14, 2008, and therefore the records in question ought not to have been erased under the plain language of C.G.S.A. § 54-142a until the following day, i.e., April 4, 2008.  *See, e.g.,* C.G.S.A. § 54-142a; Connecticut Practice Book § 66-1.

5

suggest that Defendant and others in the Wolcott Police Department did in fact possess the records at such time but felt that they could not divulge them to Plaintiff or her attorney, a signed Affidavit of Dominic Angiolillo, at the time a Captain of the Wolcott Police Department, states that "[t]he Wolcott Police Department researched" Plaintiff's attorney's April 14, 2008 request for Plaintiff's arrest and criminal records and then "determined that *no such records exist[ed] as they were erased* pursuant to [C.G.S.A.] § 54-142a," and accordingly Plaintiff's counsel's letter requesting these records was returned Plaintiff's counsel "with a stamp on it *indicating that no such records exist*." [Doc. 23-4] at 1 (emphasis added).   In addition, Defendant's Local Rule 56(a)(1) Statement of Materials Facts, [Doc. 23], restates and cites Mr. Angiolillo's statement that "[t]he Wolcott Police Department researched [Plaintiff's attorney's] request and determined that *no such records exist as they were erased* pursuant to [C.G.S.A.] § 54-142a."   *See* [Doc. 23] at 2 (emphasis added).

The Court finds statements suggesting that Plaintiff's arrest records *did not exist at all* on April 14, 2008 to be somewhat puzzling, and at odds with the referenced state statute and its interpreting caselaw.   For example, in *State v. Anonymous*, 237 Conn. 501 (Conn. 1996), the Connecticut Supreme Court explicitly noted that the term "erasure" as used in C.G.S.A. § 54-142a "*does not mean physical destruction of the records*," but "rather[] it involves sealing the files and segregating them from materials which have not been erased and protecting them from disclosure, except that disclosure is permitted in a few, very limited circumstances described in the statutes." *State v. Anonymous*, 237 Conn. 501, 513 (Conn. 1996) (emphasis added) (internal quotation marks and citations omitted).   Other state courts have echoed this interpretation of the statute, repeatedly holding that "[f]or purposes of § 54-142a, [e]rasure alone *does not mean the physical destruction of the documents*.'" *State v. Weber*, 49 Conn. Supp. 530, 531 n.1 (Conn. Super. 2004) (emphasis added)

(quoting *Doe v. Manson*, 183 Conn. 183, 185 (Conn. 1981) and *Ruggiero v. Fuessenich*, 237 Conn. 339, 348 (Conn. 1996)).  Consequently any alleged contention by the Wolcott Polce Department that on April 14, 2008 the records Plaintiff sought simply *did not physically exist* cannot be supported under a reasonable reading of C.G.S.A. § 54-142a.

If there were any lingering question about whether Section 54-142a(e) intends for erased records to be physically destroyed such that they no longer exist, the statute also "*designates the manner in which erased records shall be protected*:  'The clerk of the court or any person charged with retention and control of such records in the records center of the judicial department or any law enforcement agency having information contained in such erased records ... shall provide adequate security measures to safeguard against unauthorized access to or dissemination of such records or upon the request of the accused cause the action physical destruction of such records, except that such clerk or such person shall not cause the actual physical destruction of such records until three years have elapsed from the date of the final disposition of the criminal case to which such records pertain."  *State v. Anonymous*, 237 Conn. at 513 (emphasis added) (quoting C.G.S.A. § 54-142a(e)(1)).  Clearly neither this statute nor its subsequent interpreting caselaw require that "erased" records, barring additional circumstances, be physically destroyed within a month of the conclusion of a criminal case.

On the contrary, the statute makes provisions for limited access to such "erased" records, access which includes requests from the subject of such documents, providing that once these records have been erased, "[t]he clerk of the court or any person charged with retention and control of such records in the records center of the Judicial Department or any law enforcement agency having information contained in such erased records *shall not disclose to anyone, except the subject*

7

*of the record, upon submission pursuant to guidelines prescribed by the Office of the Chief Court Administrator of satisfactory proof of the subject's identity, information pertaining to any change erased*." C.G.S.A. § 54-142a(e)(1) (emphasis added).  Further, as evidenced above, the statute explicitly provides that it is only "*upon the request of the accused*" that "actual physical destruction of such records" should or could take place, and even then such "actual physical destruction of such records [shall not occur] *until three years have elapsed from the date of the final disposition* of the criminal case to which such records pertain."  *Id.* (emphasis added).

Thus while it is true that under the circumstances of Plaintiff's final judgment, "[s]tate statute required that the subject records be erased, and therefore not available for public disclosure," [Doc. 24] at 5, it is not the case that they should have ceased to exist altogether less than two weeks after they were erased under the state statute, as Defendant has suggested.  *See*, *e.g.,* [Doc. 23] at 2.

Further, assuming that these records *did* still exist at the time of Plaintiff's counsel's request for them on April 14, 2013, it does not stand to reason that disclosing them to Plaintiff's counsel would constitute a *public* disclosure.  The request in question, as discussed *supra*, came in the form of a letter from Plaintiff's attorney, John R. Williams, dated April 14, 2008.  *See* [Doc. 23-3]. Addressed to the "Chief of Police" of the Wolcott Police Department and bearing a subject heading that included both Plaintiff's full name and date of birth, the letter's substantive text is as follows:

Dear Sir:

Please provide me with copies of any and all records – including erased records – concerning my captioned client.  She was arrested by officers of your department pursuant to warrant last year and her case was dismissed very recently.  I shall be happy to pay any costs involved and expect your full response within four business days as required by the Freedom of Information Act.  A release and authorization executed by my client is enclosed.

8

Sincerely yours,
John R. Williams

*Id*.  Enclosed with this letter was an Authorization and Release form signed by Plaintiff and addressed to the Wolcott Police Department, stating that Plaintiff "authorize[d] and direct[ed]" the Wolcott Police Department "to provide any and all records concerning [Plaintiff] to [her] attorney: John R. Williams, Esq." [Doc. 23-4].  The Authorization and Release form, dated April 14, 2008, also included Plaintiff's date of birth, home address, and social security number, along with her attorney's full work address and contact information.  *Id.*

It is implausible, given the contents and nature of both Plaintiff's hand-signed Authorization and Release form and Plaintiff's attorney's letter to the Wolcott Police Department, that the Wolcott Police Department would have doubted that the records request was from and for Plaintiff – i.e., the subject of the erased records.  Furthermore, had the Wolcott Police Department not believed that the April 14, 2008 records request from Plaintiff's attorney, who was clearly acting as an agent for his client in this respect, fully met the erased record disclosure requirements contained within C.G.S.A. § 54-142a(e)(1), the Wolcott Police Department ought to have – and presumably would have – indicated as much, rather than indicating and stating that "no such records exist[ed]."  *See* [Doc. 23] at 2.  The Court therefore finds Defendant's many contentions that because "[P]laintiff herself, being the 'subject of the record[,]' never requested the records[,] ... [D]efendant is entitled to summary judgment," *see, e.g.,* [Doc. 31] at 1, to be unconvincing and without merit.

**B.      Plaintiff's First Amendment Right-of-Access Claim**

Plaintiff avers that Defendant "has wrongfully and tortiously concealed and/or destroyed the said evidence for the purpose of depriving [Plaintiff] of her right of access to the courts of the United

9

states to obtain redress of her grievances," and that as a result Plaintiff "has been deprived of her right to seek redress for constitutional violations in this court, which right is secured to her by the First Amendment to the United States Constitution as enforced through Sections 1983 and 1988 of Title 42 of the United States Code." [Doc. 1] at 2.

As the Second Circuit noted in 2012, "Courts of Appeals have recognized two variants of right-of-access claims.  First, plaintiffs may allege that systemic official action frustrated their ability to file a suit.  The object of this type of suit is to place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed.  Such suits are therefore labeled 'forward-looking.'" *Sousa v. Marquez*, 702 F.3d 125, 127 (2d Cir. 2012) (some internal quotation marks and citations omitted).  In contrast, "[t]he second variant of right-of-access claims is 'backward-looking access claims,' covering suits that cannot now be tried (or tried with all the material evidence), no matter what official action may be in the future." *Id.* at 127-28 (some internal quotation marks and citations omitted).  "This may occur, for instance, if the official action caused the loss or inadequate settlement of a meritorious case.  In either circumstance, however, the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Id.* at 128 (internal quotation marks and citations omitted).

While the Second Circuit has not officially "followed other circuits in recognizing a backward-looking right of access," it has made clear that "[s]uch claims, if recognized, would be available only if the governmental action caused the plaintiff's suit to be dismissed as untimely, or *if the official misconduct was so severe as to render[] hollow his right to seek redress*," a circumstance which might arise "for example, if public officials *withheld from the plaintiff key facts which would form the basis of the ... claims for redress*;" however, "*such claims are available only*

10

*if a judicial remedy was completely foreclosed* by the false statement or nondisclosure." *Id.* (internal quotation marks and citations omitted) (emphasis added).

Plaintiff avers that a potential "underlying action ... has been lost" to her, as she requested her arrest records at least in part "so that she could identify the person or persons who provided false and misleading information which led to her wrongful arrest," as "[t]his individual or individuals violated [her] Fourth Amendment rights and without the documentation of which she was legally entitled from [Defendant]," she "lost her opportunity to pursue this Fourth Amendment cause of action." [Doc. 27] at 8.  As a result, she claims, she "has been effectively and meaningfully denied access to the courts." *Id.*

Given that Plaintiff describes her opportunity to proceed with any possible underlying action as having been "lost," and that she states that she has been "deprived ... [of] her right of access to the courts of the United States" – statements and phrasing which contain a substantial degree of permanence – the Court assumes that Plaintiff intended her right of access claims to be backward-looking.  The Court also infers as much because of the relief Plaintiff seeks: "judgment against ... [D]efendant for compensatory damages, punitive damages, attorney fees, costs and such equitable relief ... as this court shall deem fair and appropriate." *See* [Doc. 1] at 2-3.  These claims fall within the rubric of those brought in a backward-looking right of access law suit.  In contrast, claims brought in a forward-looking right of access lawsuit seek "to place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed." *Sousa v. Marquez*, 702 F.3d at 127.

As an initial matter, however, the Court notes that at the time at which Plaintiff's Complaint was filed in this matter – i.e., April 8, 2009 – the Connecticut statute of limitations for false arrest,

which is three years, had not yet run.  In general, "[a] federal court must look to state law to determine the applicable statute of limitations in a section 1983 suit.  The general three-year personal-injury statute of limitations period set forth in [C.G.S.A. § 52-77] has been uniformly found to be the appropriate one for federal civil rights actions." *Pinkston v. Connecticut*, 3:09-CV-00633, 2009 WL 2852907 at *2 (D.Conn. Sept. 2, 2009) (citations omitted); *see also, e.g., Lounsbury v. Jeffries*, 25 F.3d 131, 133-34 (2d Cir. 2004) (applying Connecticut's three-year statute of limitations to actions brought pursuant to Section 1983).

Further, as the Second Circuit has made clear, to the extent that a backward-looking right of access claim is recognized at all in this circuit,  it is available only in circumstances in which "the official misconduct was so severe as to render[] hollow [a Plaintiff's] right to seek redress." *Sousa v. Marquez*, 702 F.3d at 128.  Where a public official has withheld facts from a Plaintiff in such a way as to "form the basis of the ... claims for redress," a backward-looking right of access claim would be "available only if a judicial remedy was *completely foreclosed* by ... [such] nondisclosure." *Id.* (internal quotation marks and citations omitted) (emphasis added).  The Second Circuit has noted a common and "sensible recognition" across various appellate opinions from around the country "that when a plaintiff in a backward-looking access suit alleges that the government concealed or manipulated relevant facts," as Plaintiff alleges was the case here, "the claim may not proceed if the plaintiff was, at the time of the earlier lawsuit" – or, presumably, at the time of any potential earlier lawsuit – "aware of the facts giving rise to his claim."  *Id.* (citations omitted).  The appellate court has explicated that this is "because a plaintiff who has knowledge of the facts giving rise to his claim ... *does* have adequate access to a judicial remedy," and, indeed, the very "*point* of the backward-looking right of access recognized by other circuits is to ensure that plaintiffs *have* that

opportunity...." *Id.* at 128-29 (some emphasis added; some emphasis in original).

Defendant contends that in the case at bar that, even if Plaintiff did not have copies of her arrest records, Plaintiff *did* have "all of the applicable information she needed to file her false arrest claim," and that "[t]herefore, her claim was not actually frustrated," as she was aware that, among other things, her arrest by the Wolcott Police Department; her charges having been dismissed on March 14, 2008; and certain police officers – named by Defendant as Malloy, Gorman, Gullick and Captain Angiolillo – were involved in the investigation and arrest.[3] [Doc. 31] at 1-2. Defendant concludes that accordingly Plaintiff "had all the pertinent information to file a claim for false arrest," and, given that, any such claim "was not actually frustrated or impeded," particularly as "once she filed her false arrest lawsuit, she would have been able to obtain the records through discovery and/or other various mechanisms." *Id.* at 2.

Although the Court is sympathetic to Plaintiff's claims, and certainly does not endorse all of Defendant's actions or apparent interpretation of the Connecticut erasure statute, the Court agrees with Defendant's assessment of Plaintiff's options at the time her lawsuit was filed. It was not necessary for Plaintiff to know all potential defendants in an action for false arrest stemming from the events that took place in March of 2008 at the time at which she brought such an action. It was also not necessary, for that matter, that Plaintiff include all possible claims in an initial complaint. As addressed by the Federal Rules of Civil Procedure, additional defendants or claims may be added to a lawsuit as they are identified through discovery. *See* Fed. R. Civ. P. 15 and Fed. R. Civ. P. 21.

---

[3]   The Court notes that there is dispute between the Parties' pleadings as to whether Plaintiff's arrest was made pursuant to a warrant. *See, e.g.,* [Doc. 31] at 2 n.1 (discussing this difference of opinion). This is a question that could and should have been resolved through discovery.

Further, whether Plaintiff's arrest records were in actuality destroyed or whether they were merely not revealed, Plaintiff could have attempted to obtain "the identity or identities of her accuser(s) and the statement(s) they made to the Wolcott Police," *see* [Doc. 32] at 1, through discovery made pursuant to a lawsuit brought against, for example, the Wolcott Police Department or certain Wolcott Police officers. It is true that in this instance Plaintiff was apparently informed that her arrest records *did not exist at all*, an assertion which, if taken as true, might have discouraged Plaintiff from pursuing such paper records through discovery even *had* she brought a lawsuit for false arrest. However, there are other ways via discovery Plaintiff could have obtained or attempted to obtain this information, for example through depositions and other forms of testimony.

Further, were it to have become clear, in an action for false arrest, that Plaintiff's arrest records *had* been destroyed, Plaintiff could have sought a court's adverse instruction or sanctions for spoliation. "Spoliation is the destructive or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably forseeable litigation." *West v. Goodyear Tire and Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999) (citation omitted). A party's "obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when [that] party should have known that the evidence may be relevant to future litigation." *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001). In order to establish that spoliation has occurred, three elements must be established: "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the evidence was destroyed with a 'culpable state of mind;' and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Dall v. Certified Sales, Inc.*, 3:09-CV-00019, 2011 WL 572366 at

14

*1 (D.Conn. Feb. 15, 2011) (citations omitted); *see also, e.g., Residential Funding Corp. V. DeGeorge Fin. Corp.*, 306 F.3d 99, 208 (2d Cir. 2002). As addressed *supra*, a backward-looking right of access claim would be "available only if a judicial remedy was *completely foreclosed* by ... [such] nondisclosure." *Sousa v. Marquez*, 702 F.3d at 128 (internal quotation marks and citation omitted).

For the facts and reasoning articulated *supra*, the Court cannot conclude, even interpreting the evidence before it in favor of the Plaintiff – as the Court must for purposes of summary judgment – that Plaintiff was not "aware of the facts giving rise to [her] claim." *See id*. (citations omitted). On the contrary, Plaintiff *was* aware of these facts and, moreover, *did* "have adequate access to a judicial remedy," *see id.*; for whatever reason, Plaintiff opted not to utilize such access, but such a decision does not constitute a successful backward-looking right of access claim.

The case at bar is governed by the Second Circuit's holding and reasoning in *Sousa v. Marquez*, in which the court of appeals stated that "[i]f a party is aware of the basic facts undergirding his claim but fails to make his case, whether through inadequate discovery or otherwise, [that party] may not relitigate" or, presumably, litigate "that dispute through a denial-of-access claim." 207 F.3d at 129. The court of appeals further said:

> In sum, [the plaintiff] has not shown a genuine dispute of material fact with respect to his access-to-courts claim because he has not even stated a claim upon which relief could be granted. As other courts of appeals have recognized, and as we now hold, backward-looking access claims are not cognizable if the plaintiff, claiming that the government concealed or manipulated relevant facts, was aware at the time of the earlier lawsuit [or, presumably, at the time of a potential earlier lawsuit] of the facts giving rise to his claim.

*Id.* Ms. Gagain's case presents the same circumstances.

15

**IV.     Conclusion**

The Court accordingly GRANTS Defendant's Motion for Summary Judgment, [Doc. 22], and

DISMISSES the case WITH PREJUDICE.  The Clerk is directed to close the file.

It is SO ORDERED.

Dated: New Haven, Connecticut
          December 27, 2013

                                                    /s/ Charles S. Haight, Jr.
                                                    Charles S. Haight, Jr.
                                                    Senior United States District Judge

16